Judge Underwood
delivered the Opinion of the Court.
In 1810, James McGinnis executed his bond to Porter, for the conveyance of lots Nos. 89 and 90, in the town of Newport, “ including the tan yard, dwelling house, currying shop and bark house, with all other improvements thereon, so soon as he should pay half the purchase money, to wit, four hundred and fifty dollars.”
In 1826, Porter filed his bill, charging, in substance, that McGinnis had only an equitable title to one of the lots, and that he had no title whatever to the other; that McGinnis was dead; that Taylor had administered, and as administrator, had obtained judgments on the two last notes executed for a part of the purchase money; that he, Porter, had paid more than the half of the purchase money, and that he could obtain no title. Wherefore, he prayed for an injunction, dissolution of the contract, &c.
The circuit court perpetuated the injunction; rescinded the contract, and decreed the payment of five hundred and fifty three dollars to the complainant, Porter, (that being the amount of the purchase money paid by him,) subject to a deduction of three hundred dollars, as rent for the use of the premises while they were in the possession of Porter, who had abandoned the property, after using it about six years.
From the above decree, Taylor prosecutes an appeal; and now insists, that it was erroneous to rescind the contract; but, if that be right, then the circuit court erred in not compelling the appellee to account for waste, and the dilapidation of the improvements, as well *422 as rent; and that the sum allowed for rent, is less than it shotdd have been.
Neither a stranger, nor a vendor’s administrator can take the place of a vendor, and require a vendee to pay purchase money, if take the title, which the vendor is unableto make. The vendor, or his legal representatives, as such, can alone make such title as the vendee will be compelled to accept.
When a vendee has made reasonable efforts to obtain the title, without success, has abandoned the possession, and filed his bill for rescission, it is too late to compel him to take the title,though ever so good.
The contract was correctly rescinded by the circuit court. McGinnis was unable to make a title according to his contract. This seems to be admitted by Taylor ; but he claims the right of controlling the lots in Newport, and disposing of them under authority derived from the original proprietor of the town ; and an effort is made by him, to compel Porter to accept the title through him, and to pay the purchase money. The principle is unknown to this court, which will allow one man to substitute himself, as the vendor, in place of another, against the will of the vendee. The fact that Taylor has administered on the goods and chattels of McGinnis, cannot give him the right to substitute himself for McGinnis in the fulfilment of his contracts for land., by conveying the title directly to Porter. The appellee is not (found to accept the title from any one except his vendor, or his representatives, acting in their representative character. The insolvency of McGinnis, in this case, cannot change the rule. Taylor’s warranty may be better than that of the representatives of Mc-Ginnis, but Porter is not bound to accept it, because he. made no contract with Taylor.
It is úseles■ to enquire whether the title to the lots is vested in the trustees of Newport, or to determine in whom it abides. It is sufficient that McGinnis had no title, and that his representatives, as such, have proved no title, in order to comply specifically with the contract. It is too late now to require Porter to accept a •title, if it were entirely unexceptionable.
The qi est’ons raised relative to rent, waste and deterioration of tne property by its use and abandonment, are more important.
It seems that Porter abandoned the property after using it about six years. Before abandoning the property, he had made one or more ineffectual efforts to obtain the title from McGinnis, who had removed from the state. Failing to obtain the title,"he abandoned the property without giving any notice of the abandonment to McGinnis, then a nonresident.
‘onofthe
The chancellor, contiact^houlíi place the parties fore the salebor as nearly so as sestdmnoliere-;pu^aje ed — So long as bide by tííe con” tract, the ven- • in. Pos" chargeable with tlTcTto^nterest on the money te^dfsatfirm-he is rents'5,'5 untiiThe sun'?nders P°ssession, and is entitled to in-torest nnjil his money is refunded — if his there should be ylstinentofVent and interest,
it is not clear, in what state of repair the improvements were left. In 1827, according to the proof, the improvements had gone to destruction. The dwelling house had not been in tenantable order for the preceding seven years. It may be inferred from the evidence, that the lots, in their unimproved condition, were not worth more than a sixth part of the sntn Porter agreed to give for them. The improvements, the tannery, constituted much the greater part of the value of the property. Upon these facts, the questions arise, whether Porter shall be compelled to pay rent, and if so, for what period of time ; and whether he shall be compelled to account for the deterioration of the improvements.
The great principle which governs the chancellor in rescinding contracts, is to place the parties, if practicable, in statu quo. If that Cannot be done, then he should come as near to it as possible, the nature and stipulations of the contract considered. If in this case, Porter had paid all the purchase money as it became due, and then asked for a rescission of the contract because he could not obtain a title, equity would require of McGitinis to repay the purchase money, and of Porter to restore the property. But so long as Porter held and used tile propertv which he contracted for, he would have no right to demand interest on the money he had paid for it. Nor would McGinnis, under such circumstances, have a right to demand rent. This should be the rule so long as the parties continued to affirm the contract. Upon a disaffirmance by the vendee, if he continues in possession thereafter, he should account for rents, and is entitled to interest. The present, however, is not a • 1 v, . ,, . ’ ■ case coming precisely within the operation of the foregoing; rules. e 15 '
Porter never paid the whole of the purchase money, McGinnis did not, therefore, obtain the full equivalent for the property, according to the terms of the contract, Consequently, could not have been indemnified for the vise of the entire property, by the use of a part of the purchase money. While Porter enjoyed all he contracted for, McGinnis only enjoyed a part of the consideration he was to have, under the contract. This inequal *424 ity should be made up. We deem it unnecessary, however, to go into a consideration of the principles applicable to this case, in order to fix the rule which should govern in ascertaining the extent of Porter’s liability for rent, because it is very clear, that he has been charged as much as could be allowed under any rule we might adopt.
A vendee is not required to go out of the state, to notify a non-residentvendor, oes the con-abandon tirapos session without giving nonce.
An estate to he restored to the vendor, upon a rescission of a contract, on account of his failure to comply, and make the title — lie must take in the condition in which it may be at the time of the restoration-without compensation for the casual destruction, decay or dilapidation of buildings and other improvements, not caused by any culpable act or omission of the vendee. — If he has sold and removed, or wan-tonlydestroyed, or injured, the improvements, the vendor will be entitled to indemnity for the loss.
We are of opinion, that the circuit court correctly re-fusecj t,0 charge Porter with rent after he had abandoned ¿ s u , \/r n- • the property. At that time, McGinnis was a nouresi-|ent anq was not the duty of Porter to go out of the state in pursuit ot McGinnis, in order to notify him, ^lat ^ie contract was renounced ; especially as it was the duly of McGinnis to malte the title upon the pay-lnent Gf ]la]f the purchase money; wherein McGinnis was delinquent.
Upon the subject of waste, it is sufficient to remark, that there is no evidence which shews that Porter committed any.
The deterioration of the property seems to have been the result of ordinary use and natural decay. It does not appear, that Porter made any repairs, nor is it shewn, what sum would have been sufficient to keep the premi-" .ses in repair. Upon this branch of the case, the question is, shall Porter be compelled to restore the property in as good condition as it was in when he received it ? If he does not, shall he account for the deterioration ?
The vendor is in every case bound, upon the rescission of the contract, to return the whole of the purchase money. If he be robbed and lose it all, the hour after receiving it, or be deprived of it by any casualty whatever, still he is bound to restore the whole. If that be the case, does not reciprocity hold the vendee liable for the restoration of the property in as good a condition as it was in when he received possession ? It might be regarded as a hard case on the part of a vendor, who was compelled to return a thousand,'or ten thousand dollars, which he had received for a lot and the improvements on it, and to take back the lot without its improvements, when they constituted nine tenths of the value of the property, at the date of the sale. Suppose the improvements are destroyed by fire, is the vendee bound to re *425 build, or to deduct the value of the improvements from the purchase money, when the contract is rescinded? We think the vendee is not bound to rebuild, or to account for the value of improvements, destroyed by casualty. Notwithstanding such destruction, he is bound to accept a title, provided the vendor complies with his contract, or tenders a performance in due time. It would be difficult to shew, that the vendor’s failure to comply with the contract, could, in sound morals, give him an equitable claim to the value of the improvements which were destroyed in their use or by casualty, when the loss would fall upon the vendee, provided the vendor performed the contract, or could insist upon a specific execution before the chancellor. To allow the vendor to recover for improvements thus destroyed, after he was in default to such an extent as justified the rescission of the contract, would be to reward his wrong. Inasmuch, therefore, as the vendee is compelled to pul up with the loss, where the vendor has a right to sell the property and observes the contract on his part, he ought not to abide by or sustain the loss, where the contract is not rescinded for any'fault of his, but for the failure or inability of the vendor to perform it.
The vendee in possession is the quasi tenant of the vendor where the contract is executory. But still the vendee holds so far in his own right as to incur no legal obligation to make repairs, or to.warrant or insure against casualties. How can it be told, that the same kind of casualty,' or one more destructive, might not have happened, if the vendor had continued in possession and not made the sale ? Would he keep the property in any better repair than his vendee ? If casualties happened while he was possessed and the owner, or if he failed to repair and the property went to destruction, the loss would be his. There is no certainty, that the property would be safer remaining in the hands of the vendor, then in the possession of the vendee; and therefore, unless the injury can be traced to some culpable act or omission of the vendee producing the loss in the value of the improvements, -foe perceive no ground on which to charge him. If he set fire to them, *426 and consumed them, or if he removed and sold them, — <s in these and similar cases, as the deterioration would result from his voluntary act, lie should be held responsible on the rescission of the contract for the value of the property he had thus destroyed, or used. But when, Without his fault, a loss 'happens, it should fall on the vendor who has been faithless to l)is contract.
The restoration of the purchase money, in the same number of dollars and cents, may be far from doing exact justice to the vendee ; because the rise of property-in price, between the date of the contract and the time the money is restored, may be so great, that he could not purchase witli the money a farm or land of half the intrinsic value of that he surrenders by rescinding the contract. The intrinsic value of lands and farms should be tested by their capacity to produce food for man and beast, and to sustain life in the greatest comfort with the least labor. A thousand dollars invested to day may lay the foundation for procuring a comfortable subsistence with ease. It may require two or five thousand dollars ten years hence, to accomplish the same thing. It cannot,. therefore, be said, that the vendor has hot occasioned a •loss to the vendee, or that he has in every respect fully-indemnified him by returning the purchase money. As the money may be returned at a time when it will not purchase half the estate contracted for from the true owner, and as the law never- has, and probably never can, devise a rule to estimate the difference in profits resulting from investing money at this or that period, so as to give- the vendee compensation for what may be termed the depreciation or deterioration in the value of money, reciprocity does not require, that the vendee should pay the vendor for improvements destroyed by-accident, or worn out by use, or natural decay.
The decree must be affirmed, with costs.